GREENBERG TRAURIG, LLP
JORDAN D. GROTZINGER (SBN 190166)
grotzingerj@gtlaw.com
JENNIFER L. GRAY (SBN 287855)
grayjen@gtlaw.com
ROBERT S. FREUND (SBN 287566)
freundr@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone:   (310) 586-7700
Facsimile:   (310) 586-7800

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| HIP HOP BEVERAGE CORPORATION, a Nevada corporation,<br><br>            Plaintiff,<br><br>v.<br><br>JUNEICE DEANNA MICHAUX, an individual; ANHM FZCO, a California Limited Liability Company; JP MORGAN CHASE BANK, a national banking association; and DOES 1-100,<br><br>            Defendants. | CASE NO. 2:16-cv-3275<br><br>**DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:          October 24, 2016<br>Time:         10:00 a.m.<br>Ctrm:         1600<br>Judge:        Hon. Michael W. Fitzgerald<br><br>Action Removed:  May 12, 2016<br>Trial Date:          April 11, 2017 |

MOTION FOR JUDGMENT ON THE PLEADINGS

CHI 67367273v3

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on October 24, 2016, at 10:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Michael W. Fitzgerald in Courtroom 1600 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, Defendant JPMorgan Chase Bank, N.A. ("Chase") will and hereby does move pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings in favor of Chase on the claim asserted against it.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the concurrently filed declaration of Jennifer L. Gray, the Third Amended Complaint, the argument of counsel, and upon any other matter that the Court may properly consider.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 15, 2016.


DATED:  September 22, 2016          GREENBERG TRAURIG, LLP


                          By      */s/ Jennifer L. Gray*
                                  Jordan D. Grotzinger
                                  Jennifer L. Gray
                                  Robert S. Freund
                                  Attorneys for Defendant JPMorgan Chase Bank,
                                  N.A.

MOTION FOR JUDGMENT ON THE PLEADINGS

*CHI 67367273v3*

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF MOTION ............................................................ 1

BACKGROUND ............................................................................................................. 3

    A.    MICHAUX'S ALLEGED FRAUDULENT SCHEME. ..................................... 3

    B.    HIP HOP'S PRIOR LITIGATION AGAINST BANA. ..................................... 3

    C.    HIP HOP INITIATES THIS ACTION AGAINST CHASE. .............................. 5

    D.    HIP HOP'S FIRST THREE PLEADINGS IN THIS ACTION ARE DISMISSED. .................................................................................................. 6

    E.    HIP HOP AMENDS FOR THE THIRD TIME, BUT STILL MAKES NO EFFORT TO RECOVER FROM THE PRIMARY WRONGDOER. ..................... 7

LEGAL STANDARD ..................................................................................................... 8

ARGUMENT .................................................................................................................. 9

I.    THE ACTION IS BARRED BY THE STATUTE OF LIMITATIONS. ............................................................................................. 9

    A.    JUDICIAL ESTOPPEL BARS HIP HOP FROM PLEADING A DISCOVERY DATE LATER THAN APRIL 10, 2012. ............................... 10

    B.    HIP HOP FAILS TO ALLEGE SUFFICIENT FACTS TO INVOKE THE DISCOVERY RULE. ..................................................................... 13

II.    THE TAC FAILS TO STATE A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY. ....................................... 17

III.    THE COURT SHOULD DISMISS PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES. ..................................................................... 19

    A.    CONCLUSORY ALLEGATIONS ARE INSUFFICIENT. .......................... 19

    B.    HIP HOP FAILS TO ALLEGE EMPLOYER RATIFICATION. ................... 20

CONCLUSION .............................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Air Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*,
    744 F.3d 595 (9th Cir. 2014) ....................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................8

*Barron v. Reich*,
    13 F.3d 1370 (9th Cir. 1994) .....................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................8, 18

*Bell v. St. Clair*,
    No. 1:13-CV-01594-SKO PC, 2015 WL 1606968 (E.D. Cal. Apr. 9,
    2015) .........................................................................................................12

*Cavan v. Maron*,
    No. CV-15-02586-PHX-PGR, 2016 WL 1644005 (D. Ariz. Apr. 26,
    2016) .........................................................................................................15

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ..................................................................13

*Milne ex rel. Coyne v. Slazenger*,
    No. 2:02CV08508-FMC-PLAX, 2009 WL 3140439 (C.D. Cal. Sept. 25,
    2009) .........................................................................................................10

*Darringer v. Intuitive Surgical, Inc.*,
    No. 5:15-cv-00300-RMV, 2015 WL 4623935 (N.D. Cal. Aug. 3, 2015) ...................15

*Diehl v. Starbucks Corp.*,
    No. 12CV2432 AJB (BGS), 2014 WL 5171799 (S.D. Cal. Oct. 14, 2014)................18

*Dworkin v. Hustler Magazine Inc.*,
    867 F.2d 1188 (9th Cir. 1989) ...................................................................8

*Fairbank v. Wunderman Cato Johnson*,
    212 F.3d 528 (9th Cir. 2000) .....................................................................8

ii

MOTION FOR JUDGMENT ON THE PLEADINGS

*Graebner v. James*,
   2012 WL 6156729 (N.D. Cal. Dec. 11, 2012).................................................9

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) ...........................................................................10

*Han v. United States*,
   944 F.2d 526 (9th Cir. 1991) ...........................................................................17

*Hawker v. Bancinsurance, Inc.*,
   No. CV F 12-1261 LJO SAB, 2013 WL 1281573 (E.D. Cal. Mar. 26,
   2013) .................................................................................................................19

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
   189 F.3d 971 (9th Cir. 1999) .............................................................................9

*Hendrix v. Novartis Pharm. Corp.*,
   975 F. Supp. 2d 1100 (C.D. Cal. 2013) ..........................................................14

*AE ex rel. Hernandez v. Portillo*,
   No. CV F 09-2204 LJO DLB, 2011 WL 2173695 (E.D. Cal. June 2,
   2011) .................................................................................................................19

*Hunter v. Nature's Way Products, LLC*,
   No. 16CV532-WQH-BLM, 2016 WL 4262188 (S.D. Cal. Aug. 12, 2016) ...............16

*Keilholtz v. Lennox Hearth Prods.*,
   No. 08–cv–00836–CW, 2009 WL 2905960 (N.D. Cal. Sept. 8, 2009).......................16

*Kozlowski v. Stroomberg*,
   No. 2:13-CV-00291-JAM, 2013 WL 5883672 (E.D. Cal. Aug. 21, 2013)...................8

*Liebb v. Daly*,
   Nos. C 04-950 CW (PR), C 04-4213 CW (PR), 2008 WL 902110 (N.D.
   Cal. Mar. 31, 2008) ............................................................................................8

*Noel v. Hall*,
   568 F.3d 743 (9th Cir. 2009) .............................................................................8

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
   514 F.3d 856 (9th Cir. 2007) ...........................................................................12

*Plumlee v. Pfizer, Inc.*,
   No. 13-cv-00414, 2014 WL 695024 (N.D. Cal. Feb. 21, 2014)....................16

iii

MOTION FOR JUDGMENT ON THE PLEADINGS

*Russell v. Rolfs*,
    893 F.2d 1033 (9th Cir. 1990) ...................................................................10, 13

*Wagner v. Prof'l Eng'rs in Cal. Gov't*,
    354 F.3d 1036 (9th Cir. 2004) ..........................................................................10

**State Cases**

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
    225 Cal.App.4th 1451 (2014) ..............................................................................9

*Casey v. U.S. Bank Nat'l Ass'n.*,
    127 Cal.App.4th 1138 (2005) ............................................................................17

*Chalmers v. Raras*,
    200 Cal.App.2d 682 (1962) ...............................................................................17

*Cmty. Cause v. Boatwright*,
    124 Cal.App.3d 888 (1981) ...............................................................................15

*Davis v. Rite-Lite Sales Co.*,
    8 Cal.2d 675 (1937) ...........................................................................................14

*Del E. Webb Corp. v. Structural Materials Co.*,
    123 Cal.App.3d 593 (1981) .................................................................................8

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal.4th 797 (2005) ..................................................................................14, 15

*Grieves v. Superior Court*,
    157 Cal.App.3d 159 (1984) ...............................................................................20

*Herman v. L.A. Cnty. Metro. Transp. Auth.*,
    71 Cal.App.4th 819 (1999) ................................................................................17

*Hughes Aircraft Co. v. Superior Court*,
    44 Cal.App.4th 1790 (1996) ..............................................................................17

*Jolly v. Eli Lilly & Co.*,
    44 Cal. 3d 1103 (1988) ......................................................................................14

*Norgart v. Upjohn Co.*,
    21 Cal.4th 383 (1999) ........................................................................................14

iv

MOTION FOR JUDGMENT ON THE PLEADINGS

CHI 67367273v3

*Redman v. Walters*,
  88 Cal.App.3d 448 (1979) ...................................................................19

*Sands v. Eagle Oil & Ref. Co.*,
  83 Cal.App.2d 312 (1948) ...................................................................19

*Smith v. Indus. Ac.. Comm'n of Cal.*,
  174 Cal.App. 199 (1917) .....................................................................17

*Thomson v. Canyon*,
  198 Cal.App.4th 594 (2011) ...................................................................9

*White v. Ultramar, Inc.*,
  21 Cal.4th 563 (1999) ...................................................................18, 20

**State Statutes**

California Civil Code § 18 ......................................................................17

California Civil Code § 3294 ..................................................................19

California Civil Code § 3294(b) ..............................................................20

California Corporations Code § 2207(e)(6) .............................................18

**Rules**

Federal Rules of Civil Procedure, Rule 12(b) ...........................................8

Federal Rules of Civil Procedure, Rule 12(b)(6) .......................................8

Federal Rules of Civil Procedure, Rule 12(c) ........................................8, 9

v

MOTION FOR JUDGMENT ON THE PLEADINGS

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND SUMMARY OF MOTION

Plaintiff Hip Hop Beverage Corporation's ("Hip Hop") Third Amended Complaint is its *seventh* attempt, across two actions, to plead an aiding and abetting claim against a bank in its effort to find a perceived "deep pocket" from which to recoup alleged losses caused by its former employee's embezzlement. The TAC alleges that this former Hip Hop employee—the primary Defendant, Juneice Michaux—diverted 27 payments intended for Hip Hop for her own benefit. Michaux allegedly arranged for the payments to be deposited into a Bank of America account she set up to perpetrate the scheme. She then transferred the funds to a Chase bank account she also had opened to facilitate her scheme, allegedly assisted by a Chase employee. From there, Michaux transferred most of the funds back to Hip Hop. Hip Hop alleges that Michaux retained approximately $1 million for herself. Tellingly, Plaintiff has not even bothered to serve Michaux with the operative TAC, instead targeting Chase. However, the claims against Chase should be dismissed with prejudice for several reasons.

**First,** Plaintiff's claims are time-barred under the judicial estoppel doctrine and the Discovery Rule.

As to judicial estoppel, the last fraudulent transfer occurred on October 26, 2011. The three-year statute of limitations on Hip Hop's aiding and abetting claim expired on October 26, 2014 – long before this action was filed on May 15, 2015. In an effort to toll the statute of limitations, Hip Hop alleges that it did not discover the fraud until May 2012. Yet, in a prior action it filed against Bank of America relating to the same scheme, Hip Hop alleged—in three separate pleadings—that it discovered Michaux's fraud on April 10, 2012, more than three years before it filed the present action. Undoubtedly aware that its purported claim against Chase is time-barred, Hip Hop dropped the April 10, 2012 discovery date in its initial pleading in this case and, over the course of three amended pleadings, drastically revised its discovery allegations. The doctrine of judicial estoppel precludes Plaintiff from taking a position that blatantly contradicts a position it

1

1  took in a prior action or pleading in order to avoid dismissal.  Thus, the action is time-

2  barred because Hip Hop is bound to its original April 10, 2012 discovery date.

3        Separate and apart from the doctrine of judicial estoppel, the action is time-barred

4  because the TAC fails to plead discovery-related facts in sufficient detail to allow the

5  Court to determine whether the fraud should have been discovered sooner.  Instead of

6  alleging specific facts explaining the circumstances of the discovery, as required here,

7  Hip Hop's pleading has a gaping hole on this issue – Hip Hop simply says nothing about

8  how it allegedly (and conveniently) discovered the fraud barely within the limitations

9  period (and despite its prior admission of earlier discovery).  Thus, the action is time-

10 barred on this independent basis.

11        **Second,** even if Hip Hop's claim were not time-barred (it is), the TAC must be

12 dismissed because it still fails to demonstrate that Chase had *actual knowledge* of

13 Michaux's breach of her fiduciary duty, which is a necessary element of an aiding and

14 abetting claim.  The TAC does not allege (nor could it) that LaMisha Cotton, who

15 worked at a local Chase branch as a "small business specialist," was a managing agent of

16 Chase, nor does it allege facts showing that Cotton's job involved setting corporate

17 policy or exercising broad discretionary powers such that she could be a "managing

18 agent."  Cotton's alleged knowledge is not "actual knowledge."  Further, even if "actual

19 knowledge" could be established by imputing the knowledge of a low-level employee

20 such as Cotton to her employer (which it cannot under California law), Cotton's alleged

21 knowledge cannot be imputed to Chase as a matter of law, because she allegedly learned

22 of the purported fraud outside of her Chase employment.

23        Hip Hop's aiding and abetting claim against Chase is a transparent attempt to

24 target a perceived deep pocket defendant without even trying to pursue the primary

25 tortfeasor.  Not surprisingly, Hip Hop cannot clear the hurdles of the federal pleading

26 standards.  The claim against Chase should be dismissed with prejudice.

27

28

MOTION FOR JUDGMENT ON THE PLEADINGS

**BACKGROUND**

A.   **MICHAUX'S ALLEGED FRAUDULENT SCHEME.**

Hip Hop manufactures and distributes caffeinated beverage products.  TAC ¶¶ 8-10.  Over ten months in 2010 and 2011, Michaux allegedly diverted 27 payments totaling more than $3 million from Hip Hop's largest customer, ANHAM FZCO ("ANHAM") into a secret account Michaux set up at Bank of America in the name "JUNEICE D MICHAUX SOLE PROP DBA HIP HOP BEVERAGE" ("BANA Account").  *Id.* ¶¶ 12, 22.  Michaux allegedly instructed ANHAM to remit its payments into this account rather than into Hip Hop's true account.  *Id.* ¶ 27.  Michaux allegedly opened this account without the knowledge of Hip Hop's owner.  *Id.* ¶ 22.

Michaux also formed a limited liability company called ANHM FZCO, LLC ("ANHM"), which bears a striking resemblance to "ANHAM."  *Id.* ¶¶ 21, 31.  She set up a bank account in this name at Chase (the "ANHM Account").  *Id.* ¶¶ 29-31.  After ANHAM had wired its payments into the fraudulent BANA Account, Michaux transferred large portions of those funds into the Chase ANHM Account.  *Id.* ¶¶ 29, 44.  Michaux allegedly withdrew funds for herself and transferred the remainder back to Hip Hop to avoid detection.  *Id.* ¶ 44.  The TAC alleges that Michaux retained over $1 million of the diverted payments.  *Id.* ¶¶ 47, 64.  Michaux terminated her employment with Hip Hop on April 9, 2012, allegedly before Hip Hop detected her fraud.  *Id.* ¶ 48.

B.   **HIP HOP'S PRIOR LITIGATION AGAINST BANA.**

On October 16, 2012, Hip Hop sued Michaux, ANHM, and BANA ("BANA Complaint," RJN Ex. A.)  Hip Hop asserted fraud and conversion claims against Michaux and ANHM and a negligence claim against BANA.  Specifically, the complaint alleged that BANA was negligent by "failing to form a reasonable belief that it knew the true identity of Michaux."  RJN Ex. A at ¶¶ 40-41.  Hip Hop never served Michaux or ANHM, and the Court ultimately dismissed them both from the action.

BANA successfully demurred to the negligence claim twice.  Each time, the Court found that Hip Hop failed to plead that BANA owed a duty to Hip Hop.  After twice

3

MOTION FOR JUDGMENT ON THE PLEADINGS

1  dismissing the action with leave to amend, the BANA Court allowed Hip Hop a final

2  opportunity to amend its negligence claim.  Instead, Hip Hop substituted a claim for

3  aiding and abetting a breach of fiduciary duty in place of its negligence claim.  BANA

4  demurred.  The dismissal Order concluded that the SAC failed to state an aiding and

5  abetting claim because it failed to allege facts showing that BANA knew about

6  Michaux's fraud prior to providing the alleged assistance.  To illustrate the point, the

7  Court offered the following hypothetical at the demurrer hearing:

8           It's like they sat down over coffee across the street before [carrying out the

9           fraud] and discussed the whole thing and [Michaux's said] "this is the way

10          we're going to lay [the scheme] out" and then the bank manager and

11          Michaux separate.  The bank manager goes back to her office.  Michaux

12          pays the check, walks across the street and says "hello, I'd like to open an

13          account."

14  RJN Ex. B [Transcript of August 30, 2013, hearing on BANA's Demurrer to SAC], at

15  24-25.  At the hearing, the BANA Court also expressed skepticism about Hip Hop's

16  motivation for bringing claims against BANA, because Michaux had not yet been served

17  almost a year into the case despite her role as the principal wrongdoer.  RJN Ex. B, at 39.

18  The BANA Court observed that the case appeared to be an attempt to squeeze money out

19  of a large bank, rather than a legitimate suit to obtain redress from the actual wrongdoer.

20  As the BANA Court put it:

21          Plaintiff [], you've got a bad actor [Michaux] who's been sued but

22          apparently not served.  You're going after the deep pocket on the bank.

23          You've been unsuccessful in pleading a basis for liability on the bank.

24          You've had three opportunities to do that, and respectfully, sir, I don't think

25          I need to give you a fourth ....

26  RJN Ex. B, at 39.  The BANA Court dismissed the action with prejudice.

27          Shortly thereafter, Hip Hop moved for reconsideration of the dismissal, claiming to

28  have newly discovered evidence.  RJN Ex. C [Application to Reconsider], at 4.  The

4

MOTION FOR JUDGMENT ON THE PLEADINGS

1   alleged evidence comprised a declaration from Hip Hop's attorney, Mark Estes,

2   describing a telephone conversation he purportedly had with Michaux in which she

3   confessed to the fraudulent scheme and detailed the assistance she received from a

4   BANA branch manager.[1]  RJN Ex. C at 8-12.  The BANA Court denied the motion.  On

5   April 13, 2015, the Court of Appeal affirmed the dismissal.

6   **C.   HIP HOP INITIATES THIS ACTION AGAINST CHASE.**

7           Having failed in its efforts to recoup its alleged losses from BANA, Hip Hop filed

8   the present action on May 13, 2015, just a few weeks after the Court of Appeal affirmed

9   the BANA dismissal.  Although none of Hip Hop's pleadings in the BANA Action

10  remotely hinted at any involvement by a Chase employee, Hip Hop now claims that

11  Michaux perpetrated her fraud with the knowledge and active assistance of employees at

12  both BANA and Chase.  Allegedly, Michaux could convince employees of *both* banks to

13  participate in her felonious scheme for money.

14          Hip Hop's allegations against Chase are nearly identical to those against BANA.

15  Hip Hop attempted to cure its prior pleading deficiencies by importing wholesale the

16  hypothetical illustration offered by the BANA Court just before it dismissed the BANA

17  Action with prejudice.  Specifically, Hip Hop alleges that Michaux met LaMisha Cotton,

18  who worked at a local Chase branch as a "small business specialist," at a TGI Friday's in

19  2009.  TAC ¶ 32.  She alleges that they became friends and attended multiple happy

20  hours together at TGI Friday's.  *Id.*  During these encounters, Michaux allegedly

21  disclosed her fraudulent scheme to Cotton, who agreed to assist by opening a bank

22  account and processing transfers for money.  TAC ¶¶ 33-40.

23

24

---

25  [1]  The conversation was allegedly arranged by Hip Hop employee Tamara Clark, the
    same employee who was a signatory to the Chase account allegedly used to commit the

26  fraud.  RNJ Ex. D [ANHM Account Authorization Form].  Clark is also allegedly the
    employee who obtained the bank records revealing Michaux's fraud in May 2012.  TAC

27  ¶ 53.  Further, Hip Hop has effected service of the documents in this action on Michaux

28  "c/o Tamara Clark" – never directly or personally upon Michaux.

CHI 67367273v3

### D.   HIP HOP'S FIRST THREE PLEADINGS IN THIS ACTION ARE DISMISSED.

Chase demurred to the FAC and SAC because the claims were barred by the statute of limitations and failed to state a claim for aiding and abetting.  Chase argued that Hip Hop's claims were time barred because Hip Hop's three pleadings in the BANA Action consistently alleged that Hip Hop discovered Michaux's fraud the day after her termination – *i.e.*, more than three years before Hip Hop filed this action on May 13, 2012:

> **On April 10, 2012**, while in the process of removing items from Michaux's office, Plaintiff's personnel found bank statements and records in the desk used by Michaux during her employment with Plaintiff.  ***These statements and records caused Plaintiff's personnel to become suspicious*** that Michaux had embezzled funds belonging to Plaintiff.

(RJN Exs. A [BANA Compl. ¶ 10]; E [BANA FAC ¶ 10]; F [BANA SAC ¶ 9].)

By order dated October 6, 2015 ("Order"), the state court sustained Chase's demurrer to the FAC on both grounds.  The state court held that Hip Hop failed to show it "'did not make the discovery [of Michaux's fraud] until within three years prior' to filing the complaint" and failed to allege "facts showing 'the time and surrounding circumstances of the discovery and what the discovery was.'"  RNJ Ex. G at 3.  The state court also held that the FAC failed to state an aiding and abetting claim because Hip Hop "did not allege facts showing Defendant [Chase] had actual knowledge of [Michaux's breach of fiduciary duty]."  *Id.*  "Plaintiff did not allege [that] Cotton was one of [Chase's] officers, directors, or managing agents," and, therefore, Chase could not have known of Michaux's fraudulent conduct.  RNJ Ex. G at 4.

The SAC failed to cure these deficiencies.  The SAC ignored the state court's order directing it to "allege facts explaining the [discovery] allegation and showing when and how Plaintiff discovered the alleged wrongdoing."  RNJ Ex. G at 4.  Chase demurred again.  Chase argued that the Court should disregard the new allegations under the sham pleading doctrine because they contradicted Hip Hop's prior allegations and in the

MOTION FOR JUDGMENT ON THE PLEADINGS

BANA Action.  Chase argued that that under California's sham pleading doctrine, a plaintiff must allege facts explaining why, through inadvertence or mistake, its prior pleadings had alleged inconsistent facts.  Chase also argued that the discovery allegations still could not justify tolling the statute of limitations.  The Court agreed that the sham pleading doctrine compelled Hip Hop to explain the reason for the inconsistent pleadings.  The Court once again dismissed the action with leave to amend the complaint to add allegations explaining the reason for its contradictory allegations.

### E.   HIP HOP AMENDS FOR THE THIRD TIME, BUT STILL MAKES NO EFFORT TO RECOVER FROM THE PRIMARY WRONGDOER.

The TAC failed to explain why Hip Hop had alleged specifically in three separate complaints against BANA it had discovered Michaux's fraud on April 10, 2012.  The TAC merely added a self-serving statement that its allegations in the BANA Action were "not true."  TAC ¶ 57.  Chase demurred once again arguing that the action was time-barred and that the Court should not toll the statute of limitations, because the discovery allegations were both insufficient and barred from consideration under the sham pleading doctrine.  Although Hip Hop's Opposition failed to address these arguments, the Court overruled Chase's demurrer to the TAC.

Meanwhile, Michaux had (and still has) yet to appear.  Previously, the Court had issued an order to show cause why Michaux and ANHM should not be dismissed for lack of service.  Hip Hop then filed a proof of service purporting to have served Michaux [with the FAC] "c/o Tamara Clark," a former Hip Hop employee who resides in Long Beach, California.  Michaux did not answer or otherwise respond to the FAC.  Hip Hop has not served Michaux with any of the subsequently amended pleadings, nor has it sought her default.  To date, Michaux has yet to answer or otherwise respond to the pleadings and Hip Hop neither sought her default nor voluntarily dismissed her from the action.  Despite being accused of embezzling millions of dollars from Hip Hop, Michaux appeared for her noticed deposition, unrepresented by counsel, and freely incriminated herself.  As outlined in Chase's removal papers and Chase's opposition to Hip Hop's

MOTION FOR JUDGMENT ON THE PLEADINGS

Motion to Remand, Michaux provided contradictory testimony about her place of residence.  Chase retained a private investigator, who eventually determined that Michaux was living in Nashville, Tennessee both at the time of the deposition and in May 2015, when Hip Hop sued.  Based on that information, Chase removed this action on diversity grounds.  On July 25, 2016, the Court denied Hip Hop's Motion to Remand.

## LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial. . . ."[2]  Fed. R. Civ. P. 12(c).  The motion is functionally identical to a Rule 12(b)(6) motion, and courts apply identical standards in deciding each type of motion.  *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog."); *Liebb v. Daly*, Nos. C 04-950 CW (PR), C 04-4213 CW (PR), 2008 WL 902110, at *2 (N.D. Cal. Mar. 31, 2008) ("It is well-settled that the standard applied to Rule 12(c) motions is the same as that applied to Rule 12(b)(6) motions.").  "Judgment is appropriate where the plaintiff fails to state a claim supportable by a cognizable legal theory." *Kozlowski v.*

---

[2]  The state court's ruling on Chase's demurrer to the TAC does not preclude this Rule 12(c) Motion.  Following removal, a motion for judgment on the pleadings may be brought even if the state court upheld the pleadings.  *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 530-32 (9th Cir. 2000) (holding that federal court may properly disregard earlier state court rulings where state court standards differ from applicable federal court standards); *Noel v. Hall*, 568 F.3d 743, 747 n.6 (9th Cir. 2009) (noting orders denying motions to dismiss are "generally interlocutory" and "subject to reconsideration by the court at any time").  The applicable federal pleading standards, as articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) require Plaintiff to plead *plausible facts*, whereas the state court treats all facts alleged in the TAC to be true "however improbable they may be." *Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal. App. 3d 593, 604 (1981).  Hip Hop's allegations are not just implausible; they are also directly contradicted by its prior pleadings, as discussed herein.  Differences in pleading standards aside, Hip Hop has not and cannot state a claim against Chase, for the reasons discussed below, and the Court should dismiss the TAC with prejudice.

*Stroomberg*, No. 2:13-CV-00291-JAM, 2013 WL 5883672, at *2 (E.D. Cal. Aug. 21, 2013) (citation omitted).

In considering a motion under Rule 12(c), the Court may consider judicially noticed facts and documents.  *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) ("When considering a motion for judgment on the pleadings, this court may consider facts that 'are contained in materials of which the court may take judicial notice.'") (quoting *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)).

## **ARGUMENT**

## I.    THE ACTION IS BARRED BY THE STATUTE OF LIMITATIONS.

Michaux allegedly diverted 27 payments from Hip Hop during a ten-month period in 2010 and 2011.  The last fraudulent transfer occurred on October 26, 2011.  TAC ¶ 28. Absent any tolling, the statute of limitations for any claims associated with the fraud expired on October 26, 2014, long before this action was filed on May 13, 2015.[3]  Hip Hop has never disputed that its claims are time-barred unless they are tolled.

---

[3]  The applicable statute of limitations for Hip Hop's aiding and abetting claim is three years because the claim sounds in fraud.  "The statute of limitations for a cause of action for aiding and abetting a tort generally is the same as the underlying tort."  *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1478 (2014).  "Thus, the statute of limitations for aiding and abetting a breach of fiduciary duty is the same as the statute of limitations for breach of fiduciary duty."  *Id.* at 1479.  "The statute of limitations for breach of fiduciary duty is three years or four years, *depending on whether the breach is fraudulent or non-fraudulent.*"  *Id.* (emphasis added).  "'Where the gravamen of the complaint is that defendant's acts constituted actual or constructive fraud, the applicable statute of limitations is the … [three-year] limitations period governing fraud even though the cause of action is designated by the plaintiff as a claim for breach of fiduciary duty.'"  *Graebner v. James*, 2012 WL 6156729, at *5 (N.D. Cal. Dec. 11, 2012) (quoting *Thomson v. Canyon*, 198 Cal. App. 4th 594, 607 (2011)) (alterations in original).

MOTION FOR JUDGMENT ON THE PLEADINGS

### A.   JUDICIAL ESTOPPEL BARS HIP HOP FROM PLEADING A DISCOVERY DATE LATER THAN APRIL 10, 2012.

Plaintiff may not invoke the discovery rule because it is estopped from asserting a discovery date later than April 10, 2012, under the doctrine of judicial estoppel.  Judicial estoppel bars a party from making an assertion in a legal proceeding "which directly contradicts an earlier assertion made in the same proceeding or a prior one." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).   "Judicial estoppel applies to a party's stated position whether it is an expression of an intention, a statement of fact, or a legal assertion." *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004).  The doctrine is "intended to protect the integrity of the judicial process by preventing a litigant from 'playing fast and loose with the courts.'" *Id.* (quoting *Russell*, 893 F.2d at 1037).  "'Estoppel is *even more appropriate* where the incompatible statements are made in two different cases, since "inconsistent positions in different suits are much harder to justify" than inconsistent pleadings within one suit.'" *Milne ex rel. Coyne v. Slazenger*, No. 2:02CV08508-FMC-PLAX, 2009 WL 3140439, at *5 (C.D. Cal. Sept. 25, 2009) (emphasis added) (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001)).

Hip Hop's three pleadings in the BANA Action consistently alleged:

> *On April 10, 2012*, while in the process of removing items from Michaux's office, Plaintiff's personnel found bank statements and records in the desk used by Michaux during her employment with Plaintiff.  *These statements and records caused Plaintiff's personnel to become suspicious* that Michaux had embezzled funds belonging to Plaintiff.

RJN Exs. A [BANA Compl. ¶ 10]; E [BANA FAC ¶ 10]; F [BANA SAC ¶ 9] (emphasis added).  Hip Hop's pleadings have been anything but consistent.[4]  The original and FAC

---

[4]  In fact, with each amended complaint, Hip Hop further attempts to distance itself from its April 10, 2012 discovery admission by omitting facts it previously alleged, adding new ones that cannot be reconciled with its prior claims, and providing no explanation as to why its prior admissions were not correct.

MOTION FOR JUDGMENT ON THE PLEADINGS

against Chase omitted any mention of Hip Hop personnel finding key bank statements in Michaux's desk on April 10, 2012. Instead, those pleadings vaguely alleged that "[a]fter Michaux's termination, through a review of the Company's business and financial records, Plaintiff discovered [Michaux's scheme]." FAC ¶ 13. No specific discovery date was alleged, even though Hip Hop had previously admitted to discovery on April 10, 2012. In response to Chase's demurrer to the FAC, Hip Hop did *not* repudiate the April 10, 2012 date or suggest that it was alleged by mistake. Instead, Hip Hop offered a tortured interpretation of its prior BANA allegation, stating:

> The Court should note that the second sentence of this paragraph does not allege a date upon which HHBC's personnel became suspicious. All that can be conclusively determined from this paragraph is that HHBC alleged in its pleadings against BANA that on April 10, 2012, HHBC's personnel found some bank records in Michaux's desk, period.… [T]he BANA allegations should not be interpreted to mean that Hip Hop personnel became suspicious right then *on April 10, 2012, when they found some bank statements.*

Opp'n to Demurrer to FAC at 8 (emphasis added). Hip Hop's Opposition conceded that the statements triggering its suspicions were found on April 10, 2012.

Recognizing the hole it had dug by continuing to acknowledge the April 10, 2012 discovery date, Hip Hop's SAC boldly omitted all references to April 10, 2012, to finding Michaux's documents in a desk, or finding them based on a search of company records. No explanation was provided for this self-serving omission. The SAC ignored that Hip Hop had ever made these claims. In their place, the SAC alleged—for the first time—that after her termination, Michaux requested the ANHAM files be sent to her, and Hip Hop complied. SAC ¶¶ 49-50. Apparently, Hip Hop sent Michaux its only ANHM file, without making a copy or reviewing it first. The SAC further alleged, for the first time, that:

MOTION FOR JUDGMENT ON THE PLEADINGS

CHI 67367273v3

> On or about May 19, 2012 Plaintiff became aware of records that indicated additional Company accounts were maintained at Bank of America and Chase. On May 21, 2012 the Company instructed Tamara Clark, an employee, to *obtain* copies of bank accounts. Tamara was able to obtain the bank records on May 21, 2012 and shortly after reviewing these records, she discovered substantial irregularities.

SAC ¶ 53. Conveniently, this new allegation places the discovery date just within three years from the date the action was filed—by a matter of days.[5] It does not try to explain away its prior admission that Hip Hop personnel learned of the fraudulent scheme on April 10, 2012. The state court once again sustained Chase's demurrer with leave to amend.

Like the SAC, the TAC's discovery allegations contradict those Hip Hop made in the BANA Action and in its earlier pleadings and fail to demonstrate that the inconsistencies are the result of mistake or inadvertence. The TAC alleges that Hip Hop sent the only copy of the ANHM file to Michaux after she left the company on April 9, 2012. TAC ¶¶ 48-50. Hip Hop did not recover the file. On May 19, 2012, Hip Hop inexplicably "became aware of" "additional" unspecified bank accounts, and on May 21, 2012, its employee, Tamara Clark, mysteriously "obtained" bank records. TAC ¶ 53.

---

[5] Notwithstanding that Hip Hop is judicially estopped from asserting contradictory positions in separate actions, Hip Hop's contradictory allegations within this action separately violate the rule against sham pleadings. "A party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding." *Air Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014). Although the Ninth Circuit previously held that the Federal Rules of Civil Procedure do not explicitly "prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations," *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007), that case addressed pleadings within the same action that were inconsistent and "not necessarily" contradictory, unlike Hip Hop's clearly contradictory allegations here. *See also Bell v. St. Clair*, No. 1:13-CV-01594-SKO PC, 2015 WL 1606968, at *3 (E.D. Cal. Apr. 9, 2015) (noting that "Plaintiff may not plead around the deficiencies in his claims by omitting previously pled facts").

MOTION FOR JUDGMENT ON THE PLEADINGS

The TAC provides *no explanation* why the BANA pleadings specifically alleged an April 10, 2012 discovery or why its earlier pleadings omitted both the BANA facts and the discovery allegations Hip Hop is advancing.  This is fatal to Hip Hop's claim.

In lieu of explaining why the BANA pleadings and its own earlier pleadings, which alleged different discovery facts, Hip Hop merely insists that its current allegations should be taken as true, while claiming that its prior BANA admissions were "not true," and lays blame for the falsehoods on its prior counsel, who is not involved here.  TAC ¶¶ 55-58.  This self-serving statement does not overcome the judicial estoppel and sham pleading concerns.  It fails to explain *why* after conducting a factual investigation into the complaint, Hip Hop's counsel would have alleged the April 10, 2012 date.

When put to task, Hip Hop *proved* that it could not explain the inconsistency.  Hip Hop's prior counsel stated, under oath, that he could not explain why he alleged the specific April 10, 2012 discovery date.  (RJN Ex. H, [Wohrle Dec.] at ¶¶ 5-7.)  Plaintiffs cannot simply ignore their prior admissions and by repleading and saying, "sorry, I must have been wrong."  That is not the law.  Rather, it is the exact "playing fast and loose with the courts" that the doctrine of judicial estoppel protects against.  *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

Because Hip Hop has previously admitted discovery facts in the BANA Action confirming that it discovered the alleged fraud on April 10, 2012, and had provided no evidence to show those admissions were made in error, those admissions control, and judicial estoppel applies.  The Court must disregard Hip Hop's flatly contradictory statements.  This action is barred by the statute of limitations because Hip Hop has failed to allege facts establishing that it discovered the fraud within three years of suing.

## B.   HIP HOP FAILS TO ALLEGE SUFFICIENT FACTS TO INVOKE THE DISCOVERY RULE.

Independently, the claims against Chase are time-barred under the Discovery Rule.  The Discovery Rule "postpones accrual of a claim until 'the plaintiff discovers, or has reason to discover, the cause of action.'"  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d

1017, 1024 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.,* 21 Cal. 4th 383, 391 (1999)). A "plaintiff discovers the cause of action when he at least *suspects* a factual basis… for its elements … when simply put, he at least '*suspects* … that someone has done something wrong to him.'" *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 398 (1999) (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988)) (emphasis added). "[P]laintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put [them] on inquiry or if they have the opportunity to obtain knowledge from sources open to [their] supervision." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807-08 (2005) (internal quotation marks omitted).

"To excuse failure to discover the fraud within three years after its commission, a plaintiff must plead 'facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry.'" *Id.* (quoting *Hobart*, 26 Cal. 2d at 437). A plaintiff "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808 (applying delayed discovery rule to products liability claim); *see also Hendrix v. Novartis Pharm. Corp.*, 975 F. Supp. 2d 1100, 1107 (C.D. Cal. 2013) (same). "The discovery of related facts should be pleaded *in detail* to allow the court to determine whether the fraud should have been discovered sooner." *Id.* (citing *Davis v. Rite-Lite Sales Co.*, 8 Cal. 2d 675, 681 (1937)) (emphasis added).

Despite having three opportunities to amend its pleadings in state court, Hip Hop has not met either the burden of pleading the time and manner of discovery, or of pleading facts that show its diligence. Hip Hop's clutter of new allegations in the TAC, to the effect that it did not really discover the bank statements until just inside the limitations period because only its former employee Michaux had access to them, contains no explanation at all and merely begs further questions. Contrary to its prior claim, Hip Hop now alleges that Michaux took the bank statements, that Hip Hop was unable to access Michaux's computer, and that, "after April 15, 2012," the records "could

14

MOTION FOR JUDGMENT ON THE PLEADINGS

not be located." TAC at ¶¶ 50-52. ***This is where the law required Hip Hop to*** "***specifically plead facts to show … the time and manner of discovery***." *Fox*, 35 Cal. 4th at 808 (emphasis added, citation & quotation marks omitted). Instead—in the very next paragraph and with no explanation at all, let alone "in detail"—Hip Hop jumps to the perfectly self-serving and coincidental conclusion that, "[o]n or about May 19, 2012 Hop became aware of records" that led it to "substantial irregularities." TAC ¶ at 53. ***There is no explanation of the time or manner of this remarkable discovery***. The TAC is ***silent*** on this issue. Thus, instead of pleading in detail the time and manner of discovery, Hip Hop has merely enhanced the mystery. If Michaux took the records, no one could access her computer, and the records "could not be located"—how did Hip Hop suddenly "become aware" of the records on May 19, 2012, coincidentally just days into the limitations period? TAC at ¶¶ 50-52. The response to this dispositive question is deafening silence. A fourth pleading attempt that accomplishes the opposite result of explaining "the time and manner of discovery," like the TAC, is subject to dismissal. *Fox*, 35 Cal. 4th at 808; *see also Cavan v. Maron*, No. CV-15-02586-PHX-PGR, 2016 WL 1644005, at *5 (D. Ariz. Apr. 26, 2016) (refusing to apply discovery rule where complaint merely alleged that "that in April 2015, [plaintiff] first became aware that the [delivered watch] may not have the original dial, so Plaintiff Cavan, at substantial expense, had the watch examined and evaluated by [a] watch expert"). Hip Hop has utterly failed to plead the time and manner of discovery.

Hip Hop also fails to allege the second necessary element of the Discovery Rule: why it could not have discovered the fraud sooner. To invoke the Discovery Rule, "the pleader must state with particularity facts, rather than conclusions, which excuse his failure to learn of the fraud within the statutory period." *Cmty. Cause v. Boatwright*, 124 Cal. App. 3d 888, 902 (1981); *see Darringer v. Intuitive Surgical, Inc.*, No. 5:15-cv-00300-RMV, 2015 WL 4623935, at *4 (N.D. Cal. Aug. 3, 2015) (holding plaintiff's "conclusory allegations in the FAC do not explain why he was unable to make the discovery sooner" or why plaintiff could not learn of fraud "*despite reasonable*

15

MOTION FOR JUDGMENT ON THE PLEADINGS

1  *diligence*") (emphasis in original);  *Keilholtz v. Lennox Hearth Prods.,* No. 08–cv–

2  00836–CW, 2009 WL 2905960, at *4 (N.D. Cal. Sept. 8, 2009) (holding that plaintiff's

3  fraud claims were time-barred because plaintiff "fail[ed] to plead sufficient facts

4  regarding their lack of knowledge of Defendants' alleged fraud, lack of the means to

5  discover the alleged fraud and how and when the alleged fraud was actually

6  discovered"); *Hunter v. Nature's Way Products, LLC*, No. 16CV532-WQH-BLM, 2016

7  WL 4262188, at *12 (S.D. Cal. Aug. 12, 2016) (dismissing claims as time-barred

8  because plaintiff pled "no facts that would support a finding that she was 'not negligent

9  in failing to make the discovery sooner and that [s]he had no actual or presumptive

10  knowledge of facts sufficient to put her on inquiry.'") (quoting *Plumlee v. Pfizer, Inc.*,

11  No. 13-cv-00414, 2014 WL 695024, at * 9 (N.D. Cal. Feb. 21, 2014)).

12       Hip Hop admits that it sent the ANHAM file to Michaux after she was no longer

13  employed by the company and failed to copy or review the file.  It does not allege that it

14  attempted to recover the ANHAM file.  It alleges that it instructed Tamara Clark to

15  obtain copies of bank accounts statements on May 21, 2012, but fails to explain why she

16  could not have obtained them sooner.  This last point is puzzling because Clark was a

17  party to and signatory to the ANHM Account, with Michaux.  *See* Declaration of Jennifer

18  L. Gray ("Gray Decl.") ¶ 3; RJN Ex. D [ANHM Account Authorization].  Clark had the

19  account statements already in her possession, or she could have obtained them.  Hip

20  Hop's allegation that the company only "discovered substantial irregularities," after

21  Clark reviewed the bank records in late May 2012 is also contradicted by her being a

22  party and signatory to the account.  (Compare TAC ¶ 53 to RJN Ex. D).  Regardless, Hip

23  Hop has failed to meet its burden of showing it could not have discovered the fraud

24  earlier than May 2012.[6]

25  _____

26  [6]  Hip Hop's utter lack of diligence continued even after it allegedly discovered the fraud
    on May 19, 2012.  The primary reason why Hip Hop is facing a time bar is not that it
27  took years to uncover the fraud – even by Hip Hop's account, the fraud was discovered
    within months of Michaux's departure.  The primary reason why Hip Hop finds itself
28  with a time-barred claim is that it sat on its hands for nearly three years before it filed suit

CHI 67367273v3

## II.   THE TAC FAILS TO STATE A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY.

"California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005).  Because banks owe no duties to noncustomers to investigate or disclose suspicious activities by an account holder, courts must follow "a *strict application* of the pleading requirement for the knowledge element of [an] aiding and abetting claim." *Id.* at 1152 (emphasis added).  Where a defendant challenges the sufficiency, "a court must carefully scrutinize whether the plaintiff has alleged *the bank had actual knowledge* of the underlying wrong it purportedly aided and abetted." *Id.* (emphasis added).[7]

According to Hip Hop, Chase knew Michaux's fraud only through its employee LaMisha Cotton, who allegedly assisted Michaux with banking transactions.  However,

---

against Chase.  Hip Hop sued BANA within several months of Michaux's departure, yet took no action regarding Chase until the California Court of Appeals denied its appeal of the BANA dismissal.  The discovery rule is not intended to reward parties that fritter away years without filing suit, despite having knowledge – not just suspicion – of a potential claim.

[7]  The distinction between *actual* and *imputed* knowledge is important.  It has been the law for almost a century that *imputed* knowledge is not *actual* knowledge, the latter meaning first-hand knowledge.  *See Smith v. Indus. Accident Comm'n of Cal.*, 174 Ca. 199, 200-01 (1917) (where actual knowledge required, "any kind of knowledge, other than actual, or first-hand knowledge, would be insufficient"); *see also Herman v. L.A. Cnty. Metro. Transp. Auth.*, 71 Cal. App. 4th 819, 828 (1999) noting that where agent's knowledge is imputed to principal, principal "thus lacks *actual* knowledge of the imputed fact") (emphasis added); *Han v. United States*, 944 F.2d 526, 530 (9th Cir. 1991) ("By statute, knowledge that is imputed by action of law is *constructive* knowledge, not actual knowledge.") (citing Cal. Civ. Code § 18) (emphasis in original); *Hughes Aircraft Co. v. Superior Court*, 44 Cal. App. 4th 1790, 1796 (1996) (holding that "neither constructive nor imputed knowledge is sufficient to trigger statutory liability" in light of "*actual* knowledge requirement") (emphasis in original); *Chalmers v. Raras*, 200 Cal. App. 2d 682, 690 (1962) ("[B]ad faith requires actual knowledge … rather than knowledge imputed through agency").

CHI 67367273v3

as the state court previously recognized (and Hip Hop conceded), a corporation can only acquire actual knowledge through its officers, directors, and managing agents.  RJN Ex. G (State Court Order) at 3; Ex. I (Opp'n to demurrer) at 10.  *See, e.g.*, Cal. Corp. Code § 2207(e)(6) ("'Actual knowledge of the corporation' means the knowledge an officer or director of a corporation actually possesses ....."); *Diehl v. Starbucks Corp.*, No. 12CV2432 AJB (BGS), 2014 WL 5171799, at *4 (S.D. Cal. Oct. 14, 2014) (holding corporation must have actual knowledge, through an "officer, director, or managing agent," for punitive damages claim).  The TAC alleges that Cotton was "a manager, or business specialist," but does not allege that she was an officer or director, or managing agent.  TAC ¶¶ 31-32.[8]  Further, Cotton's job duties do not support a finding she was a director, officer or managing agent.  Like the FAC and SAC, the TAC alleges that "Cotton's duties … included account opening, clearing wire transfers and authorizing cash withdrawals for its customers."  TAC ¶ 40; SAC ¶ 40; FAC ¶ 35.

The TAC contends, for the first time, "upon information and belief, the scope of Cotton's employment at Chase allow[ed] her to exercise substantial independent authority and judgment such that her decisions ultimately determine Chase's policies."  TAC ¶ 41.  This language lifted directly from *White v. Ultramar, Inc.* is nothing but a bald, conclusory allegation unsupported by any fact.  *See White*, 21 Cal. 4th at 566-67.  The TAC contains no facts suggesting that Cotton exercised independent authority and judgment for setting Chase policy or corporate decision making.  As a matter of law, Hip Hop has not properly pled an element of its claim – it has failed to allege that Chase knew of Michaux's purported fraudulent scheme.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (dismissing complaint because "plaintiffs here have not nudged their claims across the line from conceivable to plausible").

---

[8]  A "manager" is not a "managing agent."  The term "managing agent" includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decision making so that their decisions ultimately determine corporate policy."  *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566-67 (1999).

MOTION FOR JUDGMENT ON THE PLEADINGS

CHI 67367273v3

Finally, even if the TAC adequately alleged that Cotton knew of Michaux's breach (it does not), and even if *imputed* knowledge would establish liability against Chase (it would not), Cotton's knowledge cannot be imputed to Chase.  An agent's knowledge can only be imputed to a principal if it is acquired while acting within employment.  Hip Hop alleges only that Cotton acquired knowledge of the fraud while socializing with Michaux during happy hour at TGI Friday's.  Further, knowledge cannot be imputed to a principal where the third party knew that the agent would not disclose information to the principal.  Hip Hop alleges that Michaux purportedly paid Cotton for remaining silent about Michaux's alleged fraudulent activity.  Based on Hip Hop's allegations, Michaux, therefore, knew that Cotton was acting in her own interest and not in Chase's interest.  Therefore, Michaux knew that Cotton would not inform Chase of the scheme.  *See Redman v. Walters*, 88 Cal. App. 3d 448, 454 (1979); *Sands v. Eagle Oil & Ref. Co.*, 83 Cal. App. 2d 312, 319 (1948).

## III.   THE COURT SHOULD DISMISS PLAINTIFF'S REQUEST FOR PUNITIVE DAMAGES.

### A.   CONCLUSORY ALLEGATIONS ARE INSUFFICIENT.

"Punitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases." *Hawker v. Bancinsurance, Inc.*, No. CV F 12-1261 LJO SAB, 2013 WL 1281573, at *13 (E.D. Cal. Mar. 26, 2013).  Under California Civil Code Section 3294, punitive damages are only recoverable where a plaintiff alleges with factual support (and eventually proves by clear and convincing evidence) that the Defendant acted with "oppression, fraud, or malice."  Because Hip Hop's punitive damages claim lacks any factual support on Chase, it fails.  *See id.* (dismissing punitive damages claim "based on insufficient facts that Bancinsure acted with requisite malice, oppression or fraud to support punitive damages claims"); *AE ex rel. Hernandez v. Portillo*, No. CV F 09-2204 LJO DLB, 2011 WL 2173695, at *8 (E.D. Cal. June 2, 2011) (holding plaintiff "may not rely on platitudes and generalities that punitive damages are available").

19

MOTION FOR JUDGMENT ON THE PLEADINGS

**B.    HIP HOP FAILS TO ALLEGE EMPLOYER RATIFICATION.**

Under Civil Code Section 3294(b), a plaintiff cannot maintain a claim for punitive damages against a corporate defendant unless the plaintiff shows that a corporate officer, director or managing agent engaged in malicious, fraudulent or oppressive conduct. *See Grieves v. Superior Court*, 157 Cal. App. 3d 159, 167-68 (1984) ("[A] corporate employer may be liable only if the knowledge, authorization, ratification or act was on the part of an officer, director or managing agent of the corporation."); *White*, 21 Cal. 4th at 566-67 ("'[M]anaging agent'" includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decision-making so that their decisions ultimately determine corporate policy."). Here, the TAC fails to allege even the bare conclusion that a corporate officer, director, or managing agent of Chase engaged in any conduct.

## <u>CONCLUSION</u>

Chase respectfully requests that the Court grant its Motion for Judgment on the Pleadings and dismiss the Third Amended Complaint with prejudice.

DATED:  September 22, 2016            GREENBERG TRAURIG, LLP


By      */s/ Jennifer L. Gray*
        Jordan D. Grotzinger
        Jennifer L. Gray
        Robert S. Freund
        Attorneys for Defendant JPMorgan Chase Bank, N.A.

CHI 67367273v3